IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CHARISMA HUDSON, et al.,** | CASE NO. 3:23 CV 466 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **DATANYZE, LLC,** | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

### INTRODUCTION

Currently pending in this proposed class action suit for violations of the Ohio Right of Publicity Statute is Defendant Datanyze, LLC's Motion to Dismiss. (Doc. 10). Plaintiffs opposed (Doc. 14), and Defendant replied (Doc. 15). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act). For the following reasons, the Court grants Defendant's motion.

### BACKGROUND

The claims of Plaintiffs Charisma Hudson and Brian Schaefer, residents of Ohio, arise from Defendant Datanyze, LLC's product, a website which serves as a subscription-based directory of sales and marketing professionals. (Doc. 1, at 5). Plaintiffs state Defendant "claims that its platform contains over 120 million people profiled with 84 million email addresses and 63 million direct dial numbers." *Id.* Plaintiffs are among the individuals whose personal and professional information is included in the database. *Id.* at 7-9. Neither Plaintiff provided Defendant with permission to include their information. *Id.*

Defendant's business model requires a user of the database to either buy a paid subscription or first sign up for a 90-day free trial. *Id.* at 6. The paid subscription plans cost $21 to $55 per month. *Id.* The free trial allows a user to access ten total profiles in the 90-day period. *Id.* A Google Chrome extension allows Datanyze users to view information in its database when using professional networking site LinkedIn. *Id.* Plaintiffs state "Datanyze's purpose behind providing access to [Plaintiffs'] profile[s] on its platform is, in part, to solicit the purchase of paid subscriptions." *Id.* at 8. Plaintiffs do not allege any differences between the database contents offered in the free trial and the database contents offered for paid subscriptions.

Plaintiffs bring the case as a proposed class action on behalf of themselves and:

> All current and former Ohio residents who are not subscribers to Datanyze's platform and whose name, voice, signature, photograph, image, likeness, distinctive appearance, and/or identity is incorporated in profiles used to market paid subscriptions for the platform.

*Id.* at 10.

## STANDARD OF REVIEW

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiffs, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**DISCUSSION**

Plaintiffs assert a claim for violation of the Ohio Right of Publicity Statute ("ORPS"), Ohio Revised Code § 2741.01, *et seq.* (Doc. 1, at 13), and a common law tort claim for appropriation of name or likeness (Doc. 1, at 15). The Court dismisses both claims.

Plaintiffs' Claims

The ORPS provides that "a person shall not use any aspect of an individual's persona for a commercial purpose . . . [d]uring the individual's lifetime" without that individual's written consent. Ohio Rev. Code § 2741.02. The statute defines "persona" as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). Its definition of "commercial purpose" includes, in relevant part, "on or in connection with a place, product, merchandise, goods, services, or other commercial activities" and "for advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities." *Id.* § 2741.01(B)(1)-(2). The statute provides a private right of action for "an individual whose right of publicity is at issue." *Id.* § 2741.06(A)(1).

The Ohio common law tort of "appropriation of name or likeness" is "a well-recognized branch of the more general tort of interference with the right of privacy." *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 225 (1976) (citing *Housh v. Peth*, 195 Ohio St. 35 (1956); Restatement of Torts 2d § 652C), *rev'd on other grounds*, 433 U.S. 562 (1977). This tort claim, like the ORPS, subjects a defendant to liability "when he 'appropriates to his own use or benefit the name or likeness of another.'" *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (quoting *Zacchini*, 47 Ohio St. 2d at 230 n.4). As with the ORPS, to state a claim, "plaintiffs must demonstrate that their name or likeness has value." *Id.* (citing *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 343 (2006)).

3

Plaintiffs' complaint argues primarily that Defendant's use of the 90-day free trial, which allows access to ten total profiles, "is part of Datanyze's overall effort to sell its monthly subscriptions," and thus, Plaintiffs' "persona[s] and identit[ies] have been used by Datanyze to market its platform" in violation of the ORPS and Ohio common law. (Doc. 1, at 7). In their opposition to Defendant's motion to dismiss, Plaintiffs specifically state that they "do not allege that Datanyze violated the law by includ[ing] them in the database that it created for its platform, nor challenge the legality of Datanyze's collection of information to create the individual profiles for its database." (Doc. 14, at 2-3). Rather, Plaintiffs object only to "the 90-day free trial", via which Plaintiffs state "the identities of individuals profiled on Datanyze's platform are used to market Datanyze's paid subscription plans without written consent." *Id.* at 4. In other words, while Plaintiffs do not object to the existence of Defendant's product, they challenge the 90-day free trial of that product as an advertisement, therefore a "commercial purpose", which violates Ohio law.

Defendant makes two arguments in its motion to dismiss: first, that their product's use of Plaintiffs' personas is incidental and therefore unactionable, and second, that the First Amendment bars Plaintiffs' claims. (Doc. 10, at 1).

Incidental Use

"The mere incidental use of a person's name or likeness is not actionable in an appropriation claim." *Amazon.com*, 714 F. App'x at 568 (citing *Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729 (1990)).

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. . . . The fact that the defendant is engaged in the business of publication . . . out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness.

*Zacchini*, 47 Ohio St. 2d at 231, n.4 (quoting Restatement of Torts 2d § 652C). "[T]he Defendant must appropriate the name or likeness of another for the reputation, prestige, social or commercial standing, public interest, or other values associated with that likeness." *Stringer v. Richard*, 2022 WL 3577413, at *5 (N.D. Ohio) (citing *Reeves v. Fox Television Network*, 983 F. Supp. 703, 710 (N.D. Ohio 1997)).

Defendant compares its use of Plaintiffs' profiles in its database to the facts in *Vinci*, which held Dixie Cups printed with the image and information of Olympic athletes was incidental use of those identities (69 Ohio App. 3d at 729), and to the facts in *Balsley*, a federal case from this district which held a publication of Hustler magazine which included a woman's image and job history was incidental use of her identity (*Balsley v. LFP, Inc.*, 2010 WL 11561844, at *9 (N.D. Ohio)). In both of these cases, central to the courts' holdings was a determination that the use of plaintiffs' likenesses was clearly not an endorsement of the product. *See Vinci*, 69 Ohio App. 3d at 729 ("there was no implication that the athletes used, supported, or promoted the product"); *Balsley*, 2010 WL 11561844, at *9 ("the use of the photograph . . . does not imply that she uses, supports, or promotes Hustler magazine").

Plaintiffs rely on several federal district level cases for the proposition that allegations of "free previews" containing an individual's persona are sufficient to establish commercial value of that persona and state ORPS and tort claims. (Doc. 14, at 6-8). Two of these cases involve the statutory and common law of other states and are therefore inapplicable to this Court's analysis. *See Sessa v. Ancestry.com Operations, Inc.*, 561 F. Supp. 3d 1008, 1030-31 (D. Nev. 2021); *Hoffower v. Seamless Contact, Inc.*, 2022 WL 17128949, at *2 (N.D. Ill. 2022).

Plaintiffs rely next on three cases from district courts outside the Sixth Circuit which applied Ohio law. In *Kolebuck-Utz v. Whitepages, Inc.*, a federal case from Washington, the issue

5

of incidental use was not raised, and the court based its decision on the question of whether "the plaintiffs' image had commercial value because the defendant deliberately used it for commercial gain." 2021 WL 1575219, at *2 (W.D. Wash. 2021). *Kellman v. Spokeo, Inc.*, a federal case from California, similarly did not address incidental use in its analysis of Ohio law – the defendant had raised the statute's "news or public affairs" exception instead, which the court rejected. 599 F. Supp. 3d 877, 890-92 (N.D. Cal.). Additionally, Plaintiffs cite *Kellman*'s analysis of claims under California law, which is not applicable to this case. (Doc. 14, at 10) (citing *Kellman*, 599 F. Supp. 3d at 895). And *Knapke v. PeopleConnect, Inc.*, another federal case from Washington, also does not discuss incidental use; it appears the defendant may have raised it, based on a reference to "use of [the plaintiff's] persona for . . . an informational purpose," but rather than analyze Ohio's case law on incidental use, the court merely referred to the argument as an "inappropriate attack to the Complaint" based on facts outside the pleadings. 553 F. Supp. 3d 865, 877 (W.D. Wash.).

Though Plaintiffs argue these courts "rejected incidental use" (Doc. 14, at 10), it is more accurate to say these courts never considered incidental use. Because Defendant in this case raised the defense of incidental use based on the facts contained within the Complaint, these three cases provide little guidance on resolution of the issue.

Finally, Plaintiffs rely upon *Wilson v. Ancestry.com LLC*, a recent federal case from the Southern District of Ohio which concerned an individual whose information was available on Ancestry.com's public search feature, in its promotional emails and onsite messages to possible relatives, and through its two-week free trial membership. 2023 WL 1112265, at *1 (S.D. Ohio 2023). The *Wilson* court discussed incidental use and determined the availability of the plaintiff's information via these three methods was not incidental use and was therefore a violation of the ORPS. *Id.* at 10. But the court (1) relied upon *Kellman*, *Kolebuck-Utz*, and *Sessa* in coming to this

conclusion, all three of which, as discussed above, are unanalogous to this case for failure to apply Ohio incidental use law, and (2) described "not incidental" as "deliberate." *Wilson*, 2023 WL 1112265, at *9-10. This is not how the term is used in Ohio law. Nonincidental use is use is that which is "published *for purposes other than* taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity." *Zacchini*, 47 Ohio St. 2d at 231, n.4 (emphasis added). Incidental use can be deliberate – as was the case in *Zacchini*, *Vinci*, and *Balsley*.

Both Plaintiffs and Defendant further heavily cite additional federal case law from districts interpreting the statutory and common law of Illinois. *See, e.g.*, Doc. 10-1, at 7; Doc. 14, at 11-12. But this Court's role in such a case as this is to apply Ohio law as interpreted by Ohio courts. *Cf. Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938). This Court is neither bound nor persuaded by the additional federal case law cited in the briefing in this case.

While ORPS case law and name or likeness appropriation common law from Ohio courts is limited, it is not nonexistent. "[I]n order to state a cause of action for invasion of privacy by appropriation, the complaint must allege that [the plaintiffs'] name[s] or likeness[es] ha[ve] some intrinsic value, which was taken by defendant for its own benefit, commercial or otherwise." *Powell v. The Toledo Blade Co.*, 19 Media L. Rep. 1727, at *4 (Lucas Cnty. Ct. of Comm. Pleas 1991). These are separate elements – deliberate use of an individual's likeness by a defendant does not automatically confer value upon it or make it nonincidental. *See Zacchini*, 47 Ohio St. 2d at 230, n.4.

In *Zacchini*, publication of the performance of a 'human cannonball' by a television station was held to be incidental use. *Id.* at 229-231. In *Vinci*, the "purely informational" printing of well-known Olympic athletes' image and information on Dixie Cups for sale was held incidental use. *Vinci*, 69 Ohio App. 3d at 729. This was despite the public status of the plaintiffs' personas,

7

because "there was no implication that the athletes used, supported, or promoted the product." *Id.* In *Harvey v. Systems Effect, LLC*, an Ohio appellate case concerning the inclusion of the details of a lawsuit in educational materials for sale, the inclusion of the identities of the individuals involved in that lawsuit were held incidental. 154 N.E.3d 293, 306-07 (Ohio Ct. App. 2020). The court in *Harvey* noted that while the plaintiff "did not have to have 'celebrity' status," she "failed to present any evidence that her name had significant value or, indeed, any commercial value." *Id.* at 306. The court additionally concluded the use of the plaintiff's identity was "incidental" as she "was mentioned in only three slides of a 200-page presentation." *Id.* at 307.

In contrast, a plaintiff whose signature was forged by an administrative assistant at the plaintiff's former place of work in letters to former clients succeeded on his appropriation of name or likeness claim. *James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 342 (2006) ("More specifically, forgery amounts to the appropriation of the name or likeness of another.").

While the conclusions of these cases would seem to narrow the scope of the language of the ORPS and the applicable section of the Second Restatement of Torts, as recited above, this Court's role is to interpret and apply the statute in the way Ohio courts would. *Cf. Erie*, 304 U.S. at 78-79. A federal court sitting in diversity must first look to the decisions of the Ohio Supreme Court. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Intermediate state appellate court decisions are "viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). This Court's role "is to make [the] best prediction, even in the absence of direct state court precedent, of what the [Ohio] Supreme Court would do if it were confronted with this question." *Managed Health Care Assoc., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000).

8

The publication of Plaintiffs' information, with no implication that they use, support, or promote the product, in Defendant's database, which purportedly contains 120 million profiles, appears incidental in a way similar to the use of the plaintiffs' information in *Vinci* and *Harvey* was incidental. The Court makes particular note that Plaintiffs do not allege any intrinsic value, reputation, or prestige in their personas as required by the statute and by the Ohio Supreme Court in *Zacchini*. Ohio Rev. Code § 2741.01(A); *Zacchini*, 47 Ohio St. 2d at 230 n.4. They make only the conclusory allegation that each plaintiff has "intellectual property and privacy interests in her name, likeness, and persona as recognized by Ohio statutory and common law." (Doc. 1, at 8). And in contrast, this case bears little resemblance to the fraud at issue in *Bob Ross Buick*, 167 Ohio App. 3d at 342. The Court also finds persuasive Defendant's argument that under Plaintiffs' theory of the case, requiring payment for access to Plaintiffs' information is acceptable, but offering the same access for free is not. (Doc. 10-1, at 3). "Under Plaintiffs' theory, Datanyze can sell its product, just not give it away for free." *Id.* at 9. The Court agrees that this result would be paradoxical.

The Court therefore finds Defendant's use of Plaintiffs' images and information is incidental, and Plaintiffs have not adequately stated a claim under the ORPS or Ohio common law for the tort of appropriation of name or likeness.

First Amendment

Defendant additionally argues it is protected against Plaintiffs' claims by the First Amendment. (Doc. 10-1, at 10). The ORPS exempts "use of the persona of an individual that is protected by the First Amendment to the United States Constitution as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue." OH ST § 2741.09(A)(6). "The Ohio Supreme Court's decision in *Zacchini* suggests that Ohio is inclined to

9

give substantial weight to the public interest in freedom of expression when balancing it against the personal and proprietary interests recognized by the right of publicity. This suggestion is reenforced by the decision in *Vinci*." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 931 (6th Cir. 2003).

Courts are to refrain from deciding constitutional issues when doing so is not necessary. *Grutter v. Bolinger*, 288 F.3d 732, 816 (6th Cir. 2002) (citing *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) ("[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"). Because the Court dismisses Plaintiffs' claims based on Ohio incidental use law, it finds no need to reach the constitutional question posed by Defendant.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Dismiss (Doc. 10) be, and the same hereby is, GRANTED.

    s/ *James R. Knepp II*
    UNITED STATES DISTRICT JUDGE